**EMC MORTGAGE CORPORATION,**
Appellant

v.

**WINDOW BOX ASSOCIATION,**
**INC., Appellee.**

No. 10-07-00234-CV.

Court of Appeals of Texas,
Waco.

July 9, 2008.

Rehearing Overruled Sept. 23, 2008.

---

R. Michael Thompson, Cowles & Thompson, Dallas, for Appellant.

Jim Hering, Pakis, Giotes Page & Burleson PC, Waco, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

EMC Mortgage Corporation sought to foreclose on certain property owned by Window Box Association, Inc. Window Box sued EMC seeking a temporary restraining order, a temporary injunction, and a declaratory judgment that EMC's lien on the property is invalid. The parties filed competing motions for summary judgment. Window Box argued that the statute of

limitations barred EMC's right to foreclosure. The trial court granted Window Box's motion and dismissed the suit.

On appeal, EMC challenges: (1) the granting of Window Box's motion for summary judgment and the denial of EMC's motion (two issues); (2) whether foreclosure is barred by the statute of limitations; (3) Window Box's standing to assert a statute of limitations defense; (4) the granting of a permanent injunction in Window Box's favor; and (5) the trial court's award of attorneys fees to Window Box. In one cross-point, Window Box challenges the granting of EMC's motion for leave to amend its counterclaim. We reverse and remand.

## FACTUAL BACKGROUND

Dolores Vande Veegaete purchased a condominium secured by a note and deed of trust. Vande Veegaete died in August 2001. No further payments were made on the note. The note holder, Liberty Lending Services, sent a notice of default and intent to accelerate in December 2001. That same month, Window Box filed a notice of lien based on unpaid dues.[1] In January 2002, Liberty sent a letter to Vande Veegaete's estate stating that the mortgage was in default and had been placed with an attorney "for the purpose of initiating a foreclosure action." Window Box posted a notice of trustee's sale in May 2002 and foreclosed in June 2002, purchasing the property for $6,059. Liberty hired a debt collection agency, which sent a notice of representation for collection in August 2002. At some point, EMC became holder of the note and deed of trust.

In February 2003, EMC filed suit seeking judicial foreclosure, but dismissed its claims without prejudice in November 2005. In June, August, and November 2006, EMC sent notices to Vande Veegaete's estate. EMC posted a notice of trustee's sale in November 2006. Window Box subsequently filed suit.

## STANDING

In EMC's fourth issue, it contends that Window Box lacks standing to assert a statute of limitations defense.

Standing is a necessary component of subject matter jurisdiction and involves the court's power to hear a case. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 231 (Tex.2001); *Walston v. Lockhart*, 62 S.W.3d 257, 259 (Tex.App.-Waco 2001, pet. denied). A question of subject matter jurisdiction is fundamental and may be raised at any time. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex.2003); *Walston*, 62 S.W.3d at 259. Subject matter jurisdiction is a question of law subject to de novo review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

EMC asserts that, as junior lienholder, Window Box lacks standing to assert a statute of limitations defense because: (1) its lien is subordinate to EMC's lien; (2) it has an equitable right to surplus funds; (3) Vande Veegaete's statute of limitations defense does not run with the land; and (4) its ownership status provides no additional rights because it acquired the property before the maturity date. Window Box responds that it is no longer merely a junior lienholder, but is the owner of the property and is entitled to rely on the statute of limitations.

To establish standing, an individual must "demonstrate a particularized interest in a conflict distinct from that sustained by the public at large." *S. Tex.*

---

1. Window Box is the homeowner's association for the condominium complex.

*Water Auth. v. Lomas,* 223 S.W.3d 304, 307 (Tex.2007). "As a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagors deed of trust." *Goswami v. Metro. Sav. & Loan Asso.,* 751 S.W.2d 487, 489 (Tex.1988). "However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Id.*

Window Box possessed an interest in the property that would be affected by a foreclosure sale. If an affected third party has standing to challenge a foreclosure sale, it follows that the party may also assert any applicable defenses in challenging the sale. We cannot say that Window Box lacks standing to assert a statute of limitations defense. We overrule EMC's fourth issue.

## SUMMARY JUDGMENT

EMC's first and second issues challenge the granting of Window Box's motion for summary judgment and the denial of its own motion.

### Standard of Review

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007) (per curiam) (citing *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam); *City of Keller v. Wilson,* 168 S.W.3d 802, 822–24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire,* 236 S.W.3d at 756 (citing *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (per curiam); *Spates,* 186 S.W.3d at 568).

When competing motions for summary judgment are filed and some are granted while others denied, the general rule is that an appellate court should determine all questions presented and render the judgment the trial court should have rendered. *Tex. Workers' Comp. Comm' n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.,* 166 S.W.3d 885, 887 (Tex.App.-Waco 2005, pet. denied). However, an appellate court may reverse and remand if resolution of the pertinent issues rests in disputed facts or if the parties' motions are premised on different grounds. *See Sarandos v. Blanton,* 25 S.W.3d 811, 814 & n. 5 (Tex.App.-Waco 2000, pet. denied).

### Statute of Limitations

In its third issue, EMC contends that summary judgment in favor of Window Box was improper because foreclosure is not barred by the statute of limitations.

If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment. Tex. Civ. Prac. & Rem.Code Ann. § 16.035(e) (Vernon 2002). Although the note and deed of trust specify a maturity date of January 1, 2017, Window Box argues that accrual was accelerated.

 Accrual may be accelerated where: (1) "a note or deed of trust secured by real property contains an optional ac-

celeration clause"; and (2) "the holder actually exercises its option to accelerate" by sending both a notice of intent to accelerate and a notice of acceleration. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). Both notices must be "clear and unequivocal." *Id.* "[A]bsent evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration and therefore accrual." *Id.* at 565. "While accrual is a legal question, whether a holder has accelerated a note is a fact question." *Id.* at 568.

▉ The parties agree that the deed of trust contains an option to accelerate, but dispute whether EMC exercised that option. Window Box argues that the option was exercised because: (1) the December 2001 letter constitutes notice of intent to accelerate and the August 2002 debt collection letter constitutes notice of acceleration; and (2) the August 2002 letter combined with events that occurred both before and after the letter was sent illustrates acceleration.

EMC does not dispute that the December 2001 letter constitutes a notice of intent to accelerate, but contends that the August 2002 letter was sent pursuant to section 1692g of the Fair Debt Collection Practices Act and does not constitute notice of acceleration. The August 2002 letter states in pertinent part:

> This letter is sent to advise you that this matter has been referred to us for collection by LIBERTY SAVINGS BANK, FSB, the Owner and Holder of the above-referenced Note and Deed of Trust. This letter is also sent to provide

the notice required by the federal Fair Debt Collection Practices Act to be given in a debt collector's initial communications with a debtor.

> Demand is made only as to those who are obligated to make payments under the terms of the Note or Deed of Trust and demand is not made as to anyone who has been released or discharged from such obligations. As you know, the Note is seriously in default. We have been advised that the principal balance on the debt is $41,432.28, plus interest accruing from the date of default, late charges, expenses of collection and legal fees. The debt is owed to the Creditor; and unless you, within 30 days after receipt of this notice, (the "Thirty–Day Period") dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this firm. If we are notified in writing within such Thirty–Day Period that the debt, or any portion thereof, is disputed, verification of the amount of the debt as well as the name and address of the original creditor, if different from the current creditor will be provided to you.

> Please be advised that further correspondence from this office will soon be forthcoming. However, under no circumstances will any such correspondence shorten, lengthen or otherwise affect the Thirty–Day Period or have any affect whatsoever on your rights as described in the preceding paragraph.

> This firm is attempting to collect a debt and any information obtained will be used for that purpose . . .

This letter satisfies the requirements of section 1692g.[2] *See* 15 USCS § 1692g(a) (LexisNexis Supp.2008).

---

**2.** A 1692g notice must state: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that

unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will

A proper notice of acceleration "in the absence of a contrary agreement or waiver, cuts off the debtor's right to cure his default and gives notice that the *entire debt is due and payable.*" *Ogden v. Gibraltar Sav. Asso.,* 640 S.W.2d 232, 234 (Tex.1982) (emphasis added). Such an advisement conclusively establishes acceleration. *See Wolf,* 44 S.W.3d at 565. The purpose of a 1692g letter is to advise the debtor of the "right to seek validation of the debt and dispute the validity of the debt." *Eads v. Wolpoff & Abramson, LLP,* 538 F.Supp.2d 981, 989 (W.D.Tex. 2008). Advising the debtor of these rights is not tantamount to advising the debtor that the entire debt is immediately due and payable. Otherwise, there would be no need to warn creditors against including language in the notice that contradicts or overshadows the debtor's validation rights. *See Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991) ("in order to be effective, 'the [validation] notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency' ") (quoting *Swanson v. S. Or. Credit Serv.,* 869 F.2d 1222, 1225 (9th Cir.1988)).

At most, the August 2002 letter could be construed as a notice of intent to accelerate. It does not clearly and unequivocally advise the debtor that the debt is immediately due and payable. *See Wolf,* 44 S.W.3d at 566; *see also Ogden,* 640 S.W.2d at 234. It is not a proper notice of acceleration. *See Ogden,* 640 S.W.2d at 234.

Window Box also urges us to consider the totality of the circumstances to determine whether acceleration occurred.[3] We decline to do so. The question is whether EMC exercised its option to accelerate by sending a "clear and unequivocal" notice of acceleration. *See Wolf,* 44 S.W.3d at 566. This is the proper test.

Accordingly, EMC has raised a fact issue as to whether it provided notice of acceleration sufficient to accelerate the accrual date. Summary judgment in favor of Window Box was improper. Because we so hold, we need not address EMC's remaining issues or Window Box's cross-point. *See* TEX.R.APP. P. 47.1. The trial court's judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.

Chief Justice GRAY concurs in the judgment. A separate opinion will not issue.

---

be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 USCS § 1692g(a) (LexisNexis Supp.2008).

3. Window Box's totality of the circumstances argument is based on the January 2002 letter advising the debtor that the mortgage had been placed with an attorney "for the purpose of initiating a foreclosure action," the August 2002 letter, and EMC's February 2003 suit for judicial foreclosure.