# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40278
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2018

Lyle W. Cayce
Clerk

OCWEN LOAN SERVICING, L.L.C.,

     Plaintiff - Appellant

v.

REOAM, L.L.C.,

     Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:15-CV-10

Before HIGGINBOTHAM, ELROD, and DUNCAN, Circuit Judges.

PER CURIAM:*

     This appeal concerns a mortgage-foreclosure dispute arising under Texas law. The only issue here is whether the statute of limitations provided under Texas Civil Practice and Remedies Code § 16.035(a), which delineates the time within which a lien-holder must bring suit for the foreclosure of real property, expired before appellant Ocwen Loan Servicing ("Ocwen") foreclosed

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

its superior lien. After a one-day bench trial, the district court concluded that Ocwen did not abandon or waive its acceleration meaning that its foreclosure action was time-barred. We reverse.

I.

In 2008, Su Thanh Nguyen and Hongdao Thi Vo (the "Borrowers") obtained a home equity loan for the principal amount of $370,500.00 (the "Loan") from GMAC Mortgage ("GMAC"). Borrowers executed a Texas Home Equity Note (the "Note") payable to GMAC granting GMAC a security interest in a parcel of real property in Pearland, Texas. Borrowers defaulted on the Loan in 2010 and the Loan is due for the May 1, 2010 payment and all subsequent monthly payments. A notice of default and request to cure was mailed to Borrowers in June 2010 advising them that the loan was in default and that they would need to tender $10,184.52 within thirty days to become current. The notice of default advised Borrowers that failure to bring the loan current would result in an acceleration of the debt.

Borrowers did not timely cure the default and the note was accelerated on August 24, 2010. GMAC filed an application for foreclosure pursuant to Texas Rule of Civil Procedure 736 in December 2010 which was dismissed by GMAC in January 2015. GMAC filed a second Rule 736 foreclosure action in September 2011 which was nonsuited by GMAC in August 2014. GMAC negotiated the Note to Ocwen, who is the current holder of the Note, and Ocwen became the loan servicer in February 2013. Ocwen's system of records indicates that Ocwen sent nine statements to Borrowers between July 18, 2013 and May 19, 2014, requesting an amount less than the full amount outstanding on the loan.

Borrowers had additional obligations to the Village of Reflection Bay Homeowners Association (the "HOA") by a declaration of covenants, providing that the HOA was permitted to assess liens for unpaid maintenance

assessments. Under that declaration, liens for those assessments were subordinate to "any first priority lien mortgages relating to the Lots or Tracts" of the development. After Borrowers failed to pay all of their assessments owed under the declaration, the HOA placed a lien on the property and the property was sold at a foreclosure sale in January 2015 to appellee REOAM, LLC ("REOAM").

Prior to the foreclosure sale in October 2014, Ocwen brought the present action in the Southern District of Texas seeking judicial foreclosure. After REOAM purchased the property, Ocwen filed its First Amended Complaint adding REOAM as a defendant in April 2015. After a one-day bench trial, the district court held that (1) Ocwen had standing to enforce the loan agreement and foreclose on the Loan, (2) REOAM had standing to raise a statute of limitations defense as a third party with interest in the property, and (3) Ocwen did not unequivocally manifest an intent to abandon the August 2010 acceleration, meaning its claim was barred by the statute of limitations. This appeal followed.

## II.

Ocwen contends on appeal that the district court erred in concluding that its judicial foreclosure action was time-barred because it effectively abandoned the prior loan servicer's acceleration by sending monthly statements to Borrowers requesting less than the full amount of the accelerated debt, thereby permitting Borrowers to bring the Loan current without paying the accelerated

balance. "The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."[1]

Under Texas law, a secured lender "must bring suit for the . . . foreclosure of a real property lien not later than four years after the day the cause of action accrues."[2] Where the note is payable in "installments and is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment."[3] If the note contains an optional acceleration clause, the cause of action accrues "when the holder actually exercises its option to accelerate."[4] However, if the acceleration is abandoned before the limitations period expires, the contract is restored to its original condition thereby "restoring the note's original maturity date."[5] If abandonment is effective, the noteholder is no longer required to foreclose within four years of the date of the acceleration.

A noteholder can unilaterally abandon an acceleration if the borrower does not object to the abandonment and has not detrimentally relied on the acceleration.[6] This court has held that a lender can abandon its earlier acceleration by putting the borrower on notice of its abandonment by requesting payment on less than the full amount of the accelerated loan.[7] In other words, if the noteholder informs the borrower that the loan can be

---

[1] *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (internal quotation marks omitted)).

[2] Tex. Civ. Prac. & Rem. Code § 16.035(a).

[3] *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (citing *EMC Mortg. Corp. v. Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335 (Tex. Ct. App. 2008)).

[4] *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

[5] *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

[6] *Boren*, 807 F.3d at 105 (internal citation omitted).

[7] *Id.* at 106 ("A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" (citing *Leonard v. Ocwen Loan Servicing, LLC*, 616 F. App'x 677, 680 (5th Cir. 2015) (per curiam)).

brought current by payment of the amount due under the original terms of the loan rather than the full accelerated amount, such notice is sufficient to "unequivocally manifest[] an intent to abandon the previous acceleration" meaning that the limitations period triggered by the acceleration ceases to run.[8]

Ocwen argues it effectively abandoned the prior acceleration by sending nine monthly statements to Borrowers giving them the opportunity to cure their default without paying the full accelerated balance. REAOM responds by contending (1) the "anti-waiver" clause in the Deed of Trust means that Ocwen could not abandon the acceleration by sending mortgage statements requesting less than the accelerated amount; (2) Ocwen did not produce competent evidence that the mortgage statements were actually sent to the Borrowers; and (3) Ocwen could not manifest an intent to abandon the prior acceleration because of the two pending Rule 736 foreclosure proceedings.

REOAM first claims that the following "anti-waiver" clause in Section 11 of the Deed of Trust prevented Ocwen from abandoning the prior acceleration by requesting less than the full accelerate amount:

> **Borrower Not Released; Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

REOAM argues that because the terms of the contract allow the lender to accept less than the fully accelerated amount without waiving its right to acceleration, Ocwen cannot have unequivocally manifested its intent to abandon the earlier acceleration by *requesting* less than the fully accelerated

---

[8] *Id.*

amount. We agree with Ocwen that the anti-waiver provision reserves the lender's rights under the agreement if it defers exercising one of its remedies; it does not preclude the lender from abandoning an earlier acceleration. In interpreting an identical clause as not precluding the lender's ability to abandon an acceleration, this court noted that "[a]bandonment of an existing acceleration and waiver of [the lender's] right to accelerate in the future are two distinct issues and th[e subject] provision only addresses the latter, providing [lender] with a 'reservation of rights if [the lender] chooses to refrain from exercising a right or remedy under the deed of trust.'"[9] In that case, the lender abandoned an earlier acceleration by accepting less than the full amount due, which the court found was compelling evidence of an intent to abandon.[10] The anti-waiver provision, the court found, did not foreclose the lender's ability to abandon.[11] Accordingly, REOAM's reliance on the anti-waiver clause to distinguish this case from *Boren* and *Leonard* is unavailing; the provision's preservation of Ocwen's lender's right to accelerate in the future did not affect its ability to abandon an existing acceleration.

In the alternative, REOAM contends that even if such statements were sufficient to demonstrate abandonment, Ocwen did not present competent evidence that the mortgage statements requesting less than the full accelerated amount were actually sent to Borrowers. In its findings of fact and conclusions of law, the trial court noted that:

> While Ocwen's system of records indicates that, between July 18, 2013 and May 19, 2014, Ocwen sent nine statements to Borrowers requesting less than the total amount due on the loan, Ocwen offered no additional

---

[9] *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 335 (5th Cir. 2016) (quoting *Wells v. Bank of Am., N.A.*, No. 13-cv-3658, 2015 WL 4269089, at \*6 (N.D. Tex. July 14, 2015)).

[10] *Id.* at 334 (citing *Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016)).

[11] *Id.* at 335.

evidence that such statements were indeed sent or received by the borrowers.

The district court did not make a factual finding that Ocwen had *not* sent the mortgage statements, instead stating that the only evidence that they were sent came from an employee's testimony describing his review of Ocwen's own records.[12] Further, the court did not rely on a factual determination that the mortgage statements had not been sent in its conclusions of law, and seems to assume the opposite, concluding that, "in light of the two applications for Rule 736 Action for expedited foreclosure filed by GMAC, as Ocwen's predecessor in interest, Ocwen did not unequivocally manifest an intent to abandon the August 24, 2010 acceleration *by sending mortgage statements to the Borrowers*." In other words, the district court concluded Ocwen did not effectively abandon the acceleration because of the pending Rule 736 actions, not because there was insufficient evidence that the mortgage statements were sent. REOAM cites no statute or authority that would require further evidence that the mortgage statements were sent.[13] In sum, there was not insufficient evidence to conclude that the mortgage statements were sent and, after

---

[12] Reviewing the trial testimony, a senior loan analyst from Ocwen was asked by the district court (attempting to clarify a question asked by REOAM's counsel): "[H]ow did you draw that conclusion that [the statements were] mailed to the borrowers." Ocwen's employee responded: "[O]ur system of record, which means our computer system which we use, it does document when the statements are sent out, as well as shows the images of the actual statement which is sent out." He testified that the computer system images the statements "into our system as it—when they were sent out to the customer."

[13] The two cases cited by REOAM for its contention that Ocwen was required to put forth further "specific evidence of mailing or delivery" do not create the standard Ocwen argues for. *United States v. Wilson*, 322 F.3d 353, 360–64 (5th Cir. 2003) (holding that district court erred in determination that government had established by a preponderance of evidence that letter was sent where witness's testimony about correspondence practices was contradictory and evinced a lack of personal knowledge); *AMC Mortg. Servs., Inc. v. Shields*, No. 05-06-01194-cv, 2007 WL 1366048, at *1 (Tex. App.—Dallas 2007, no pet.) (considering whether there was sufficient evidence that demand for possession was sent pursuant to statutory provision governing mailing requirements, such as requiring "return receipt requested").

reviewing the district court's factual findings and conclusions of law, the district court did not make a factual finding that such statements had not been sent.

Finally, REOAM asserts that Ocwen could not manifest an intent to abandon the earlier acceleration because of the two pending Rule 736 actions.[14] The Rule 736 actions were filed by GMAC in December 2010 and September 2011. It is undisputed that Ocwen is bound by the actions of the prior mortgage servicer and that Ocwen took no steps to advance the proceedings. REOAM argues that because Ocwen took no affirmative steps to terminate the Rule 736 actions within the limitations window, it could have moved for a hearing to obtain an order for foreclosure at any time. Essentially, because Ocwen had the option to pursue the proceedings, REOAM argues, no reasonable borrower would believe that Ocwen unequivocally abandoned its earlier acceleration. Ocwen responds that it did not advance the proceedings because it had abandoned the prior acceleration.

This court has previously considered and rejected a borrower's argument that a Rule 736 proceeding precludes a lender from manifesting an intent abandon an earlier acceleration by requesting payment on less than the full amount of the loan.[15] REOAM's argument "misapprehends the nature of a Rule 736 order, which is merely an order 'allowing the foreclosure of a certain kind of lien'"[16] and "'not a substitute for a judgment for judicial foreclosure.'"[17]

---

[14] The district court relied on this rationale in its conclusions of law to determine that Ocwen did not manifest an intent to abandon the earlier acceleration. We now hold this was in error.

[15] *Meachum v. Bank of New York Mellon Trust Co., N.A.*, 636 F. App'x 210, 213 (5th Cir. 2016) (per curiam) ("Meachum tries to distinguish *Boren* by arguing that the Bank's predecessor actually obtained an order of foreclosure after initially accelerating the note, such that any future attempts to abandon the acceleration were ineffectual.").

[16] *Id*. (citing Tex. R. Civ. P. 736.1(a)).

[17] *Id*. (citing Tex. R. Civ. P. 735.3).

REOAM attempts to distinguish the scenario here by pointing out that the Rule 736 proceeding was still pending here whereas in *Meachum*, the lender had already obtained the foreclosure order. Such distinction is of no moment. We agree with REOAM that if a lender can abandon an acceleration through the sending of mortgage statements requesting payment on less than the full amount of the loan *after* obtaining a Rule 736 order, it can also do so while the Rule 736 action is still pending. Ocwen did not advance the proceedings after sending the mortgage statements requesting less than the full amount of the loan and, as such, the fact that the proceedings remained pending did not interfere with their manifested intent to abandon the earlier acceleration.

Accordingly, because Ocwen sent mortgage statements requesting less than the entire accelerated amount, giving Borrowers the opportunity to cure the default without paying the full accelerated balance, it abandoned the earlier acceleration. Ocwen's judicial foreclosure action was therefore not time-barred under Section 16.035(a) of the Texas Civil Practice and Remedies Code. We reverse.