

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| PATRICK KING MULVEY, JR., | § | No. 08-17-00186-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| U.S. BANK NATIONAL | | of El Paso County, Texas |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| SASCO MORTGAGE LOAN TRUST | | (TC # 2014DCV3597) |
| 2006-WF2, | § | |
| | | |
| Appellee. | § | |

## **O P I N I O N**

In this appeal, we review a summary judgment in favor of a lender that foreclosed on property securing a home equity loan. The question before us is whether the homeowner presented some evidence supporting one or more of his asserted affirmative defenses. We conclude that he did not, and we affirm the judgment below.

## **BACKGROUND**

The relevant facts, all derived from the summary judgment record, are easily stated. On April 6, 2006, Patrick King Mulvey, Jr. (Mulvey) borrowed $126,400.00 from Wells Fargo Bank, N.A (Wells Fargo) through a Texas home equity loan. Mulvey promised to repay the note in monthly installments. In conjunction with the note, Mulvey executed a Texas Home Equity

Security Instrument ("deed of trust") that granted a security interest in the real property located at 11260 Signal Ridge Drive in El Paso, Texas. The note and deed of trust were assigned to Appellee U.S. Bank National Association, as Trustee for SASCO Mortgage Loan Trust 2006-WF2 (hereinafter "U.S. Bank").

At some point, Mulvey fell behind on payments, and on November 21, 2008, Wells Fargo entered into a Loan Modification Agreement with Mulvey. That modification agreement adjusted the monthly payments and set a new payment schedule. The modification agreement also capitalized $9,983.47 of interest into the loan, making the new principal balance $132,413.36.

In 2009, Mulvey again fell behind on his monthly payments. Wells Fargo, acting as the mortgage servicer, hired a law firm to initiate foreclosure proceedings on behalf of U.S. Bank. In a notice letter dated October 20, 2010, the law firm gave Mulvey written notice of a default and intent to accelerate. On November 22, 2010, the law firm sent Mulvey a notice of acceleration. Under the bank's records, Mulvey did not make the July 1, 2009 payment, nor any payment thereafter.

U.S. Bank filed suit in November 2014 seeking title, possession, and foreclosure of the property under the deed of trust. U.S. Bank claimed that right as the mortgagee, and holder of the note and deed of trust on the property. It did not seek any amount due under the note. Mulvey responded to the suit by filing a general denial.

In June 2015, U.S. Bank filed a traditional motion for summary judgment. It attached the note, the deed of trust, the 2011 notice of default/intent to accelerate and the notice of acceleration, as well as various payment ledgers which purport to show the unpaid installments. The motion was also supported by the affidavit of Rodney Young, Vice President for Loan Documentation at

Well Fargo, who attested to the authenticity of the attached loan documents, notices, and records. He also swore to default and the amount due.

In response, Mulvey filed an "Amended Answer" to the summary judgment. Germane to this appeal, it contains Mulvey's affidavit which in relevant part claims:

> In April 2006 I obtained a home equity loan through Wells Fargo. In December 2008 I entered into a modification agreement with Wells Fargo concerning my home equity loan. Wells Fargo advanced additional monies to me with the modification.
>
> I made several payments to Wells Fargo after the loan modification. I tried to make a payment at the Wells Fargo Bank around July or August, 2009 but they refused the payment stating, 'I was in Active Foreclosure' and that I had to contact the servicing department at Wells Fargo. When I did contact them I was informed that I no longer qualified for the mortgage and that was all I was told. Any delinquency on my part was due to Wells Fargo not accepting the payments and\or telling me what to do next except that I needed to complete additional paper work.
>
> After several years of trying to work with Wells Fargo, I was told they had me sign an Illegal Document with Illegal terms associated with that document in the State of Texas, at the time. This Illegal document is why I 'did not qualify' for the loan modification. On many occasions while talking with the various Wells Fargo's personnel, they requested that I complete a form for another Loan Modification. I did not complete the forms knowing that they were Illegal.

The trial court granted U.S. Bank's motion for summary judgment. The court's judgment orders that Mulvey pay the entire sum owed under the note within thirty days, or failing that, the property is to be sold and the proceeds, less the fee for conducting the sale, is to be applied to the balance owed on the note. Mulvey was not responsible, however, for any deficiency following the sale.

Mulvey filed a motion for new trial that re-urged two of his affirmative defenses: (1) he was not in default because Wells Fargo refused to accept his monthly payments; and (2) Wells Fargo insisted on Mulvey entering into an illegal agreement. U.S. Bank filed a response to the motion for new trial, that attached a new affidavit from Ashely Dellinger, Vice President of Loan Documentation for Wells Fargo. She recounts all the same facts as Rodney Young's earlier

3

affidavit.  Her affidavit also adds, however, additional history of the loan, including that another "Notice of Default and Intent to Accelerate" was sent around June 7, 2009, as well as a Notice of Acceleration dated July 27, 2009.  Her affidavit references some seventeen attachments, none of which are included in the appellate record.  The motion for new trial was overruled by operation of law.

This appeal follows.  In a single issue, Mulvey contends that he raised some evidence in support of several affirmative defenses to any default under the note, and U.S. Bank did not conclusively disprove those defenses.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo.  Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

U.S. Bank asserted a traditional summary judgment under TEX.R.CIV.P. 166a(c).  Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985).  Evidence favorable to the non-movant is taken as true in deciding whether there is a disputed issue of material fact.  *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.).  All reasonable inferences, including any doubts, must be resolved in favor of the non-movant.  *Fort Worth Osteopathic Hospital, Inc.*, 148 S.W.3d at 99.  Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment.  *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

In general, a moving plaintiff is not under any obligation to negate a defendant's pleaded affirmative defenses. *Woodside v. Woodside*, 154 S.W.3d 688, 691-92 (Tex.App.--El Paso 2004, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex.App.--Houston [1st Dist.] 2002, pet. denied). Rather, an affirmative defense only prevents the granting of summary judgment if each element of the affirmative defense is supported by summary judgment evidence. *Woodside,* 154 S.W.3d at 691-92. At several junctures in the briefing, both parties state that the non-movant carries the burden to conclusively prove an affirmative defense. Here, that might be true if Mulvey had moved for summary judgment on his affirmative defenses. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)(defendant carried burden of conclusively proving pre-emption defense in its summary judgment motion). But when Mulvey only seeks to stave off U.S. Bank's summary judgment based on an affirmative defense, he needed to do no more than raise a fact issue as to each element of the defense. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936-37 (Tex. 1972); *Woodside*, 154 S.W.3d at 691-92.

Mulvey's original answer asserted only a general denial. He appears to have combined into a single pleading an "amended answer" and response to the motion for summary judgment, a practice we neither condone nor encourage. But even assuming that Mulvey did not amend his answer to assert affirmative defenses, U.S. Bank had two options: it could object that the affirmative defenses had not been properly pled, or it could respond on the merits and try the issue by consent. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); *see also Roberts v. Wells Fargo Bank, N.A.*, 406 S.W.3d 702, 707 (Tex.App.--El Paso 2013, no pet.)(noting the movant's same two choices); *Nicholson v. Mem'l Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex.App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.)("If the affirmative defense is not specifically pled, but

competent summary judgment evidence establishes a genuine issue of material fact with regard to that affirmative defense, summary judgment is improper."). We find no indication that U.S. Bank raised any pleading deficiency below. We therefore turn to the merits.

## DISCUSSION

### Did U.S. Bank Prove its Entitlement to Summary Judgment

U.S. Bank sought to judicially foreclose on property that secured a Texas home equity loan. To sustain that claim, U.S. Bank needed to prove that it held a valid deed of trust on the real property securing the note, and Mulvey was in default under terms of the note and security agreement. *See Kyle v. Countrywide Home Loans, Inc*., 232 S.W.3d 355, 362 (Tex.App.--Dallas 2007, pet. denied)(stating that copy of security agreement and affidavit showing default were sufficient to support summary judgment for judicial foreclosure); *see also McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692 (Tex.App.--Houston [1st Dist.] 2018, no pet. h.)(same); *Salas v. LNV Corp*., 409 S.W.3d 209, 220 (Tex.App.--Houston [14th Dist.] 2013, no pet.)(same). Because U.S Bank sought to sell the property, it also needed to show that Mulvey was properly served with a notice of default and acceleration. TEX.PROP.CODE ANN. § 51.002(d) ("Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).").

While Mulvey raised various challenges below to U.S. Bank's status as the holder of the note and deed of trust, none are urged on appeal, and we conclude that U.S. Bank met its initial burden of showing that it was entitled to summary judgment on it judicial foreclosure claim.

Mulvey thus had the burden to come forward with some evidence to raise a genuine issue of material fact challenging U.S. Bank's right to obtain a judicial foreclosure.

## Did Mulvey Raise a Fact Issue on His Affirmative Defenses?

Mulvey's single issue claims that the trial court erred in granting summary judgment because he asserted affirmative defenses that were "not contested" by U.S. Bank. The substance of his argument is that he asserted and presented some evidence of at least one affirmative defense that raises a genuine issue of material fact precluding summary judgment. His affirmative defenses alleged that: (1) U.S. Bank's suit was barred by limitations; (2) Wells Fargo insisted on Mulvey signing "illegal" paperwork, which appears to mean that Wells Fargo improperly advanced additional money when it modified the loan; and (3) any default was based on Wells Fargo refusing to accept tendered payments.

### *Limitations*

The sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues. TEX.CIV.PRAC.&REM.CODE ANN. § 16.035(b); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). Generally, when a note is payable in installments and is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the note, or date of the last installment. TEX.CIV.PRAC.&REM.CODE ANN. § 16.035(c); *EMC Mortg. Corp. v. Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335 (Tex.App.--Waco 2008, no pet.). However, if that note allows for the acceleration of the payments upon default, the cause of action accrues when the note holder actually accelerates the note. *Wolf*, 44 S.W.3d at 566; *Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015). Acceleration requires two distinct unequivocal actions: (1) a notice of intent to accelerate, and (2) notice that the obligation has been accelerated.

7

*Wolf*, 44 S.W.3d at 566. Here, under the summary judgment record, the lender's agent mailed a notice of an intent to accelerate on October 26, 2010 and a notice of acceleration on November 22, 2010. The lawsuit was filed on November 12, 2014, which is within four years of the actual acceleration of the debt. The trial court would have properly concluded that Mulvey did not raise a material fact issue on a statute of limitations defense.

### *Illegality*

Mulvey also claimed that someone told him that Wells Fargo had him sign an "Illegal Document." His affidavit fails to identify what document he refers to, nor does he explain what makes it illegal. He further claims that he declined to pursue any kind of additional loan modification because it would similarly require him to sign an "illegal" document.

Courts will not enforce an illegal contract. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991). However, it is not for a lay witness to decide illegality, and we are not required to simply accept the assertion of such in Mulvey's affidavit. *Cf. City of Keller v. Wilson*, 168 S.W.3d 802, 812-13 (Tex. 2005)("When expert testimony is required, lay evidence supporting liability is legally insufficient. In such cases, a no-evidence review cannot disregard contrary evidence showing the witness was unqualified to give an opinion."). Without describing any specific document, or failing to state the basis for the alleged illegality, his affidavit fails to raise any genuine issue of material fact on an illegality defense.

At most, by parsing his affidavit and written response together, we might surmise that Mulvey was complaining that the loan modification agreement in November 2008 was an extension of credit that violated section 50 of Article XVI of the Texas Constitution. Because this was a home equity loan involving homestead property, the loan must have conformed to the requirements for such loans as set out in the Texas Constitution. *See* Tex.Const. art. XVI, § 50.

8

Section 50(c) provides that no mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt "described by this section." Tex.Const. art. XVI, § 50(c).

The loan modification here actually increased the principle due under the note because it capitalized $9,983.47 of interest into the loan, and thus raised the loan's principal balance from $126,400.00 to $132,413.36. Mulvey essentially claims that capitalizing past due interest into the principal of the loan constitutes a new extension of credit, which would then require the loan modification to meet the technical qualifications for home equity loans under section 50 of Article XVI of the Texas Constitution. However, the Texas Supreme Court rejected a similar claim in *Sims v. Carrington Mortg. Services, L.L.C.*, 440 S.W.3d 10, 15 (Tex. 2014). There, the court held that "as long as the original note is not satisfied and replaced, and there is no additional extension of credit, as we define it, the restructuring is valid and need not meet the constitutional requirements for a new loan." *Id.* at 11-12. The court then further defined what was not an additional extension of credit:

> [T]he restructuring of a home equity loan that, as in the context from which the question arises, involves capitalization of past-due amounts owed under the terms of the initial loan and a lowering of the interest rate and the amount of installment payments, but does not involve the satisfaction or replacement of the original note, an advancement of new funds, or an increase in the obligations created by the original note, is not a new extension of credit that must meet the requirements of Section 50.

*Id.* at 17.

Here, the loan modification agreement specifically stated that the original note and mortgage would "remain unchanged" and bound both parties except as specifically amended. Mulvey's response to the summary judgment complained only that the interest was capitalized into the loan modification agreement. He asserts no other reason why the loan modification constitutes an additional extension of credit. But the *Sims* court characterized recapitalization of interest as a

9

"mechanism for deferring payment of obligations already owed in a way that allows the borrower to retain his home." *Id.* at 16. Based solely on the only argument that Mulvey raised, his summary judgment proofs did not raise an illegality defense under the Texas Constitution.[1]

Mulvey accordingly failed to raise a genuine issue of material fact on his illegality defense.

### *Denial of Tender*

Finally, Mulvey's response to the summary judgment alleged that he "was not past due on his payments." His response alleged that he attempted to "make payments to Wells Fargo for a number of months in 2009" but Wells Fargo "refused the payments." He also alleged that Wells Fargo failed to notify him that payments were to be made to another entity and that the account became delinquent because of Wells Fargo's acts. His pleading then incorporates his affidavit, in which he swears that "around July or August of 2009" Mulvey tried to make a payment at a Wells Fargo Bank but it was refused. The stated basis for the refusal was that he was in active foreclosure and no longer qualified for the mortgage.

Mulvey's brief refers to this a "confession and avoidance" defense. Confession and avoidance is "a plea in which a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015), *quoting confession and avoidance*, Black's Law Dictionary 361 (10th ed. 2014). What Mulvey really alleges is a breach of the agreement by U.S. Bank's agent, Wells Fargo. Assuming proper tender, Wells Fargo could not refuse payment, and then declare the note in default. In several contexts, court have recognized wrongful refusal of a proper tender as a

---

[1] We do note that the monthly payment under the modification agreement differed from that in the original note ($1,176.32 verse $1,104.59). It was impossible to tell from Mulvey's affidavit or his summary judgment proofs if the increased monthly obligation was based only on the modification agreement or from some other reason. The original note allowed that the monthly payment might fluctuate because the interest rate was adjustable. And in *Sims*, the court noted that the required payment schedule under a home-equity loan "is not one that, when initially set, can never be altered." *Id.* at 16.

potential defensive issue. *See Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex. 1982), *citing predecessor version of* TEX.BUS.&COM.CODE ANN. § 3.603 (agreeing that the wrongful failure to accept tender might form a meritorious defense to the claimed default of installment note contract); *Universal Life & Acc. Ins. Co. v. Shaw*, 163 S.W.2d 376, 379 (Tex. 1942)(stating similar rule in context of refused insurance policy payments); *In re Smith*, 524 B.R. 125, 135-36 (S.D. Tex. 2015)(allowing common law claim against bank for its wrongful refusal of a payoff that would discharge deed of trust).

U.S. Bank responds to Mulvey's argument in two ways. First, it notes that the statute of frauds precludes any of the oral statements referenced in Mulvey's affidavit from varying the terms of the note.[2] Modifications to mortgages that exceed $50,000 are subject to the statute of frauds. TEX.BUS.&COM.CODE ANN.§ 26.02(b)("A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."); s*ee Miller v. BAC Home Loans Servicing, L.P*., 726 F.3d 717, 726 (5th Cir. 2013)("It is well-settled in Texas that agreements pertaining to loans in excess of $50,000 must be in writing, including modifications of those agreements."); *Kiper v. BAC Home Loans Servicing, LP,* 884 F.Supp.2d 561, 571 (S.D. Tex. 2012)("The statute of frauds bars and makes unenforceable oral modifications to a loan agreement under § 26.02 unless they fall within an exception to the statute of frauds or do not

---

[2] The note contains in all caps and bolded the following provision:

13. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A 'WRITTEN LOAN AGREEMENT' PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRJTTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

materially alter the obligations imposed by the original contract.")(internal quotation marks omitted).  To the extent that Mulvey claims Wells Fargo orally lead him to believe that he did not need to make his payments, those alleged statement are barred by the statute of frauds.

U.S. Bank also responds that Mulvey failed to show that he made a proper tender.  We agree.  A tender is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation.  *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963).  The tender described in Mulvey's affidavit suffers from two problems--it was not made at the proper place and time, and does not account for all the payments due up to the time of acceleration.

Tender must be at the place provided in the contract for performance. 13 Sarah Howard Jenkins, *Corbin on Contracts*, § 67.7 (2003)("Tender must be made at the time and place required by the contract."); 58 Tex.Jur.3rd, Payment, § 8 (2013), at 16 ("Where an obligation is made payable at a certain place, tender of payment must be made at that place.").  Failure to tender at the place designated by the contract belies a proper tender.  *Scott v. Grant*, 84 S.W. 265, 266 (Tex.Civ.App. 1904, writ ref'd)("[W]e hold that the plaintiff's petition was insufficient and failed to disclose a cause of action, because it failed to show either payment or tender of the purchase money at the place required by the contract, and failed to furnish a sufficient excuse for noncompliance on the plaintiff's part.").  The note required payments be made on the first day of each month at "P.O. BOX 17339, BALTIMORE, MD 21297-4339 or at a different place if required by the Note Holder."  Mulvey swore that sometime in July or August of 2009 he tried to tender "a payment at the Wells Fargo Bank[.]"  He never established that the physical bank location was allowed or required by note holder.

12

Second, Mulvey swore that he tried to make *one* monthly payment around July or August of 2009 (though the payment was due on the 1st of July). He does not claim to have made tender of any additional monthly payments, nor does his response or briefing explain how a refusal to accept that single payment excused his performance for all the subsequent payments. U.S. Bank's summary judgment was premised on a default of all the payments from July 1, 2009 through November 22, 2010 when the note was accelerated. Mulvey does not show that the improper refusal of a single payment excused all the subsequent payments not made under the loan.

In summary, we overrule Mulvey's single issue and affirm the trial court's judgment.

December 19, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

13