# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2015

Lyle W. Cayce
Clerk

No. 14-20718

CHARLES BOREN; CYNDI BOREN,

Plaintiffs - Appellants

v.

U.S. NATIONAL BANK ASSOCIATION,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2160

Before STEWART, Chief Judge, and JOLLY and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

This case concerns a mortgage-foreclosure dispute arising under Texas state law. The sole issue on appeal is whether the four-year statute of limitations period provided under Texas Civil Practice and Remedies Code § 16.035(a), within which time a lender must bring suit for the foreclosure of real property under a real property lien, bars Defendant-Appellee U.S. National Bank Association's ("U.S. Bank" or "bank") counterclaim for judicial

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20718

foreclosure of Plaintiffs-Appellants Charles and Cyndi Boren's (the "Borens") home. The district court granted summary judgment for the bank. For the following reasons, we AFFIRM.

## BACKGROUND

In 2005, the Borens obtained a home equity note for the principal amount of $640,000.00 (the "Note"). The Note was payable to Home123 Corporation ("Home123") and was secured by a home equity security instrument, thus granting Home123 a security interest in the Borens' home (the "Deed of Trust"). Both the Note and the Deed of Trust contained acceleration clauses, empowering the lender with an option to accelerate the full balance of the loan in the event of a default.

In 2008, Home123 assigned the Note and Deed of Trust to U.S. Bank as trustee for C-Bass Mortgage Loan Asset-Backed certificates, Series 2007-RP1. In February 2009, the Borens failed to make their required monthly payment under the Note. As a result, in March 2009, U.S. Bank sent a letter to the Borens, which notified them that they were delinquent in the amount of $11,044.04 and provided them with 45 days to cure their default or face acceleration of the loan (the "First Notice of Default"). On May 8, 2009, after the Borens failed to cure this default, U.S. Bank sent another notice informing the Borens that it had "elected to ACCELERATE the maturity of the DEBT" (the "First Notice of Acceleration").

On June 5, 2009, less than one month after the First Notice of Acceleration was sent, U.S. Bank applied under Texas Rule of Civil Procedure 736 ("Rule 736") for an order allowing it to proceed with an expedited nonjudicial foreclosure. The Borens responded by filing a separate petition contesting U.S. Bank's right to foreclose thereby triggering automatic

2

dismissal of U.S. Bank's application.[1]  The Borens subsequently dismissed their petition without prejudice.

A pattern emerged based on this sequence of events.  U.S. Bank filed three additional Rule 736 applications after its first application was dismissed. Each time the bank filed an application under Rule 736, however, the Borens filed a petition contesting the bank's right to foreclose, thereby triggering dismissal of the bank's proceeding.  U.S. Bank did not elect to file a counterclaim seeking foreclosure in response to the Borens' petitions and the Borens nonsuited their petitions without prejudice each time U.S. Bank's Rule 736 application was dismissed.  During this period, the Borens failed to make any additional payments on the Note.

During the course of these proceedings, U.S. Bank sent two additional notices of default and two additional notices of acceleration to the Borens.  By letter dated May 20, 2010, after U.S. Bank's second Rule 736 application was dismissed, U.S. Bank sent a second notice to the Borens informing them that they remained in default on their loan (the "Second Notice of Default").  The Second Notice of Default stated that "the total amount necessary to bring [the Boren's] loan current [was] $74,313.28," which was an amount less than the fully accelerated balance of the loan.  In addition, the Second Notice of Default stated that if the Borens did not cure their "default within forty five (45) days . . . [the loan servicer would] accelerate the maturity of date of the Note and declare all outstanding amounts under the Note immediately due and

---

[1] When U.S. Bank first sought nonjudicial foreclosure of the Borens' loan in 2009, a Rule 736 proceeding was subject to automatic dismissal if a "respondent . . . filed a petition contesting the right to foreclose in a district court in the county where the application is pending." *Huston v. U.S. Bank Nat. Ass'n*, 359 S.W.3d 679, 680 n. 2 (Tex. Ct. App. 2011) (quoting Tex. R. Civ. P. 736(10)).  Texas Rule of Civil Procedure 736 was amended in 2012, but the same automatic stay and dismissal procedures remain in effect.  *See* TEX. R. CIV. P. 736.11.

No. 14-20718

payable." On September 1, 2010, after the Borens failed to make further payments, U.S. Bank sent a Second Notice of Acceleration informing the Borens that the maturity date of the Note had been accelerated.

On November 24, 2012, after U.S. Bank's third Rule 736 application was dismissed, U.S. Bank sent the Borens another notice of default (the "Third Notice of Default"). Like the Second Notice of Default, the Third Notice of Default indicated the total amount necessary to bring the loan current was less than the full balance of the loan. The Third Notice of Default also stated that the Borens had one month to cure their default or face acceleration. On February 23, 2013, after the Borens failed to make additional payments, U.S. Bank served a Third Notice of Acceleration to the Borens informing them that "the maturity date of the Note [had been] accelerated."

On May 23, 2013, U.S. Bank filed a fourth Rule 736 application, prompting the Borens to file a petition yet again, contesting U.S. Bank's right to foreclose. This time, however, the Borens' petition sought a declaratory judgment that U.S. Bank's right to foreclose was barred by the four-year statute of limitations period provided under Texas Civil Practice and Remedies Code § 16.035. On July 24, 2013, U.S. Bank dismissed their pending Rule 736 application without prejudice and removed the Borens' petition to federal district court. On the same day, U.S. Bank filed an answer in response to the Borens' petition, interposing a counterclaim for judicial foreclosure.

After issue was joined, both parties filed motions for summary judgment. The district court referred the parties' motion to the magistrate judge assigned to the case, who recommended that summary judgment be granted for U.S. Bank. The district court adopted the magistrate judge's recommendation holding, U.S. Bank, "through its actions, abandoned its previous acceleration of the debt," and the statute of limitations, therefore, did not bar foreclosure.

4

The district court then entered an order of judicial foreclosure entitling U.S. Bank to foreclose on the Borens' property.  This appeal followed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*.  *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 635 (5th Cir. 2002).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In reviewing summary judgment, we construe all facts and inferences in the light most favorable to the nonmoving party.  *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## DISCUSSION

Under Texas law, a secured lender "must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE § 16.035(a).  Whereas here, "a note or obligation [is] payable in installments [and] is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment."  *EMC Mortg. Corp. v. Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335 (Tex. Ct. App. 2008).  "If a note or deed of trust secured by real property contains an optional acceleration clause," however, the action accrues "when the holder actually exercises its option to accelerate."  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).  To exercise this option, the holder must send "both a notice of intent to accelerate and a notice of acceleration."  *EMC Mortg. Corp.*, 264 S.W.3d at 335-36.  "Both notices must be 'clear and unequivocal.'"  *Id.* (quoting *Wolf*, 44 S.W.3d at 566).

The acceleration of a note can be abandoned "by agreement or other action of the parties."  *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. Ct.

App. 2012).   In addition, "a holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity."   *Wolf*, 44 S.W.3d at 566-67.   "Abandonment of acceleration has the effect of restoring the contract to its original condition," thereby "restoring the note's original maturity date" for purposes of accrual. *Khan*, 371 S.W.3d at 353 (citations omitted).

U.S. Bank initially triggered § 16.035(a)'s four-year statute of limitations when it provided the Borens with notice of its intent to accelerate and then notice of its acceleration in May 2009.  It did not file a counterclaim for judicial foreclosure until more than four years later.  As a result, if the applicable accrual date for the statute of limitations period is the date that U.S. Bank sent its First Notice of Acceleration, the bank's judicial foreclosure claim is time barred.

U.S. Bank argues, however, that it abandoned its initial acceleration of the Note when it sent the Second Notice of Default in May 2010. The Second Notice of Default stated that the Borens could bring their loan current by submitting the amount of their past due monthly payments—rather than the full balance of the loan—and provided that the bank *would* accelerate the loan if the Borens failed to cure this arrearage within forty-five days.  According to U.S. Bank, by sending this notice, it restored the Note to its original terms and the statute of limitations did not begin to run again until it sent a subsequent notice of acceleration following the Borens' failure to submit any payments.

"Where, as here, the proper resolution of the case turns on the interpretation of Texas law, we are bound to apply Texas law as interpreted by the state's highest court."  *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (internal quotations and alterations omitted).  Because the Texas Supreme Court has not decided whether a lender may abandon its acceleration of a loan by its own unilateral actions and, if so,

what actions it must take to effect abandonment, we must make an "*Erie* guess" as to how the Court would resolve this issue. *Id.* The Texas Supreme Court would likely hold that a lender may unilaterally abandon acceleration of a note, thereby restoring the note to its original condition, in the manner that U.S. Bank did in this case: by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms.

As an initial matter, Texas' intermediate appellate courts are in agreement that the holder of a note may unilaterally abandon acceleration after its exercise, so longs as the borrower neither objects to abandonment nor has detrimentally relied on the acceleration. *See Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770, 776-77 (Tex. Ct. App. 1998) ("[I]f a creditor exercises the option to accelerate and makes a declaration to that effect, the election to accelerate can be revoked or withdrawn at any time, so long as the debtor has not detrimentally relied on the acceleration."), *disapproved of on other grounds by Wolf*, 44 S.W.3d at 570; *Dallas Joint Stock Land Bank v. King*, 167 S.W.2d 245, 247 (Tex. Ct. App. 1942) ("[A]fter a note has been declared all due under a provision giving the holder the option to do so, [the holder may] waive or rescind such action so as to reinstate the note and make it payable again according to its original terms."); *Manes v. Bletsch*, 239 S.W. 307, 308 (Tex. Ct. App. 1922) ("Appellant contends that, having already exercised his option, the same was irrevocable. This may be true as against the will of the payer, but, where the payer is not objecting to the recall of such option, we can see no reason why the payee could not revoke the same as well as not to have exercised it in the beginning."); *see also Leonard v. Ocwen Loan Serv., L.L.C.*, 2015 WL 3561333, at *3 (5th Cir. June 9, 2015) (per curiam) (unpublished) ("[T]here is authority clearly establishing that the lender's . . . action

constituting abandonment of acceleration can be unilateral.") (quotations and citation omitted)).  Further, the Borens do not argue that a lender may not unilaterally abandon acceleration.  Accordingly, the only issue in dispute is whether the Second Notice of Default that U.S. Bank sent was sufficient to constitute its abandonment.

Texas courts have framed the issue of abandonment of acceleration by reference to traditional principles of waiver.  *See Denbina*, 516 S.W.2d at 463 (explaining that a holder may "waive the exercise of the option" to accelerate a note after it "already exercised its option"); *Dallas Joint Stock Land Bank*, 167 S.W.2d at 247 (holding that a lender may "waive or rescind" its option to accelerate after exercising it); *see also Kahn*, 371 S.W.3d at 354 n.1 (explaining that "the case law simultaneously refers to both waiver and abandonment," while the Texas Supreme Court recently adopted the terminology "abandonment of acceleration").  Under Texas law, the elements of waiver include:

> (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right.

*Thompson v. Bank of America Nat. Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (internal quotation marks omitted)).  "Waiver . . . can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right."  *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015).  Waiver is a question of law when the facts that are relevant to a party's relinquishment of an existing right are undisputed.  *Id.*

A lender waives its earlier acceleration when it "put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full

amount of the loan." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 2015 WL 3561333, at *3 (5th Cir. Jun. 9, 2015) (per curiam) (unpublished). U.S. Bank's Second Notice of Default informed the Borens that the total amount necessary to bring their loan current was the amount due under the original terms of the Note and that the bank would accelerate the maturity date of the loan if the Borens failed to pay this amount. This notice unequivocally manifested an intent to abandon the previous acceleration and provided the Borens with an opportunity to avoid foreclosure if they cured their arrearage. As a result, the statute of limitations period under § 16.035(a) ceased to run at that point and a new limitations period did not begin to accrue until the Borens defaulted again and U.S. Bank exercised its right to accelerate thereafter.

Finally, we note that after the parties filed their briefs in this appeal, the Texas Legislature enacted a new statute entitled "Rescission or Waiver of Accelerated Maturity Date." The new statute states:

> If the maturity date of . . . a note . . . payable in installments is accelerated, and the accelerated maturity date is rescinded or waived in accordance with this section before the limitations period expires, the acceleration is deemed rescinded and waived and the note . . . shall be governed by Section 16.035 as if no acceleration had occurred.

TEX. CIV. PRAC. & REM. CODE § 16.038(a). The statute provides that waiver of acceleration will be effective if the lender serves written notice of its waiver by first class or certified mail. *See id.* at § 16.038(b)-(c). The statute also provides that "[a] notice served under this section does not affect a lienholder's right to accelerate the maturity date of the debt in the future nor does it waive past defaults." *Id.* at § 16.038(d). Moreover, the statute states:

> This section does not create an exclusive method for waiver and rescission of acceleration or affect the accrual of a cause of action and the running of the related limitations period under Section 16.035(e) on any subsequent maturity date, accelerated or otherwise, of the note or obligation or series of notes or obligations.

*Id.* at § 16.038(e).

The new statute provides a specific mechanism by which a lender can waive its earlier acceleration. The statute does not, however, create an exclusive method for abandoning or waiving acceleration. Instead, the statute is better construed as a "best practice" for a lender seeking to effectuate its abandonment. For purposes of this case, we do not need to determine whether the statute applies retroactively. Even if the statute were to apply retroactively, it does not prohibit the earlier methods by which a lender may abandon or waive its acceleration of the debt.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.