# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-41104
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 22, 2016

Lyle W. Cayce
Clerk

————

TIMOTHY MARTIN,

Plaintiff–Appellant,

versus

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
  Also Known as Fannie Mae,

Defendant–Appellee.

————

Appeal from the United States District Court
for the Eastern District of Texas

————

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Timothy Martin appeals the dismissal of his suit to quiet title against the Federal National Mortgage Association ("Fannie Mae"). There being no error, we affirm.

No. 15-41104

I.

In July 2004, Martin borrowed $140,000, secured by a note and deed of trust ("DOT"), to purchase a residence. The DOT named Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee of the lender, and Wells Fargo Bank, N.A. ("Wells Fargo"), eventually acquired the note and DOT.

The DOT obligated Martin to make payments each month and gave Wells Fargo the right to accelerate the obligation and foreclose in the event of default. The DOT also contained certain non-waiver provisions:

> 12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification or amortization of the sums secured by this [DOT] granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. . . . Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

In December 2009, Martin informed Wells Fargo that he could not make his monthly payment on time. Martin avers that a Wells Fargo representative told him that making the December payment late "would not be a problem; however the representative told him not to become three payments behind as that would initiate possible foreclosure proceedings." Martin made the December 2009 payment late but maintains he was current on later payments through June 2011.

Martin returned to the house from a June vacation to find (1) that Wells Fargo had returned his May and June mortgage payments without explanation, (2) various mailings offering help to owners facing foreclosure, and (3) that Wells Fargo had designated the property to be sold on July 5, 2011, at a foreclosure sale. Wells Fargo sold the property to Fannie Mae at a foreclosure

No. 15-41104

sale on December 4, 2012, for $168,011.14.

## II.

On July 1, 2011, Martin sued MERS in state court, alleging that MERS was not the owner or holder of the note and that its beneficial interest was not valid. Summary judgment was granted to MERS. In a second state suit, Martin sued Wells Fargo and other defendants, maintaining that Wells Fargo was not entitled to foreclose and was not the owner and holder; he also challenged the validity of the assignment from MERS to Wells Fargo and sought to enjoin the foreclosure. The suit was dismissed with prejudice in February 2013.

In June 2013, Martin sued Fannie Mae in state court, and Fannie Mae removed to the federal district court *a quo*. Martin does not assert that Fannie Mae engaged in any wrongdoing. Instead, he seeks to quiet title on the ground that Wells Fargo waived its right to foreclose by accepting payments for sixteen months after the initial default, so it could not sell the property to Fannie Mae. The district court dismissed Martin's claim, and we affirm.

## III.

Martin avers that the DOT's non-waiver provisions do not apply because he seeks only to have the note reinstated rather than to avoid liability under the note. That notion is frivolous. By claiming that Wells Fargo had no right to foreclose, Martin is attempting, at least implicitly, to escape liability for the late payment he made in December 2009 and the payments he missed entirely in May and June 2011. Obviously, the non-waiver provisions apply to his claims.

Martin's next theory begins uncontroversially: A party may waive certain contractual rights by acting in a manner inconsistent with the exercise of those rights. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d

3

No. 15-41104

502, 511 (Tex. 2015). Wells Fargo, Martin claims, waived its right to accelerate and foreclose by accepting his payments—for sixteen months after his initial default before accelerating—and by failing to foreclose until almost three years after default. Though precedent refutes his argument *ab initio*,[1] Martin offers three of our recent decisions (two of them unpublished)[2] to support his contention. He misreads each of them.

In *Boren*, the homeowners maintained that limitations barred the bank's attempts to foreclose. After the borrowers' default, the bank gave them notice and accelerated the entire obligation under the loan. The parties filed dueling petitions in foreclosure proceedings over the course of the next five years; meanwhile, the bank sent the owners two more notices of default and acceleration, representing that they could bring the loan current merely by making their missed payments (instead of paying the entire obligation). The owners eventually claimed that the four-year statute of limitations in Section 16.035 of the Texas Civil Practice & Remedies Code barred the bank's right to foreclose because more than four years had passed since it had first accelerated. In rejecting that reasoning, we noted that the bank had "waive[d] its earlier acceleration when it put[] the borrowers on notice of its abandonment . . . by requesting payment on less than the full amount of the loan." *Boren*, 807 F.3d

---

[1] *See Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025–26 (5th Cir. 2015) (holding that twelve postponements of a planned foreclosure did not waive right to foreclose when DOT contained a non-waiver provision); *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 239–40 (5th Cir. 2014) (per curiam) (holding that extensions of time for payment did not amount to waiver of right to accelerate and foreclose based on DOT's non-waiver provisions); *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363–64 (5th Cir. 2014) (per curiam) (same).

[2] *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99 (5th Cir. 2015); *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677 (5th Cir. 2015) (per curiam); *Rivera v. Bank of Am., N.A.*, 607 F. App'x 358 (5th Cir. 2015) (per curiam).

No. 15-41104

at 106 (quoting *Leonard*, 616 F. App'x at 680).[3]  Limitations began to run from the most recent acceleration, not from the earlier accelerations the bank had waived or abandoned.  As relevant here, the request for payment of less than the full obligation—after initially accelerating the entire obligation—was an unequivocal expression of the bank's intent to abandon or waive its initial acceleration.

In *Leonard*, the bank made a mortgage loan that Saxon Mortgage Services ("Saxon") originally serviced.  The owners defaulted and failed to cure, prompting Saxon to send a notice of acceleration.  Ocwen Loan Servicing ("Ocwen") then became the loan servicer and took no action on Saxon's initial notice of acceleration.   Ocwen instead sent new notices of default and intent to accelerate, which stated that the owners could bring the loan current by making their missed payments (rather than the entire outstanding obligation). The owners made no payments, so Ocwen sent a new notice of acceleration and initiated foreclosure.  The owners, like the owners in *Boren*, contended that Section 16.035 barred the servicer's right to foreclose.  We rejected that theory, reasoning that "a lender . . . put[s] the debtor on notice of its abandonment of acceleration by requesting payment on less than the full amount of the loan." *Leonard*, 616 F. App'x at 680.  As in *Boren*, the request for payment of less than the full obligation following an initial acceleration of the entire obligation amounted to waiver or abandonment of the acceleration.

In *Rivera*, the homeowners refinanced with a loan that Bank of America ("BOA") ultimately came to own.  The owners defaulted, received BOA's notice

---

[3] We mentioned that Texas courts treat abandonment and waiver similarly in these circumstances and that "[u]nder Texas law, the elements of waiver include:  (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right."  *Boren*, 807 F.3d at 105 (quoting *Thompson*, 783 F.3d at 1025).

of intent to accelerate, filed for and received bankruptcy protection, and then resumed making payments that BOA accepted. *Id.* BOA then sent another notice of default and intent to accelerate the entire obligation. Two years passed, then BOA, instead of accelerating, engaged the owners in negotiations for a home-loan modification. The owners never cured, and the parties never reached a modification agreement, so BOA accelerated and planned to foreclose. We rejected the owners' claim that Section 16.035's four-year limitations prohibited the right to foreclose because BOA "effectively abandoned its prior acceleration . . . by accepting payments [two years later]." *Id.* at 361.

The lenders in *Boren*, *Leonard*, and *Rivera* accelerated loans before accepting additional payments or representing that the borrowers could bring the loans current by making payments less than the entire obligation. Accepting a payment after acceleration could be intentional conduct inconsistent with the acceleration that—in some circumstances—amounts to an abandonment or waiver of the acceleration. *See Rivera*, 607 F. App'x at 361. Similarly, representing to the mortgagor that payment of less than the entire obligation will bring the loan current may amount to abandonment or waiver of the acceleration as a manifestation of "actual intent to relinquish" it. *Boren*, 807 F.3d at 105. We mention these possible arguments but do not decide them in disposing of Martin's claim because Wells Fargo accepted payments only after his *default* in 2009, not after the bank had *accelerated* the note.[4] Further, Wells Fargo never represented that Martin could bring the note current by making

---

[4] Martin also relies on the fact that foreclosure did not occur until almost three years after his initial default. He ignores the fact that he litigated with MERS over the assignment to Wells Fargo until October 2012 (only two months before the foreclosure) and was still litigating against the bank when the foreclosure sale took place in December 2012. In any event, the argument is irrelevant because the non-waiver provisions allowed Wells Fargo to delay foreclosure without waiving any rights.

payments less than the entire outstanding obligation. These differences matter because the DOT's non-waiver provisions allow Wells Fargo to accept payments less than the entire obligation or to defer acceleration and foreclosure (and any other remedy) after default without waiving its rights. Wells Fargo engaged only in conduct that was contemplated by the DOT's non-waiver provisions and thus was entirely consistent with its intent to preserve the right to accelerate and foreclose. *See Thompson*, 783 F.3d at 1025–26. Martin failed to allege any facts that would make his claim to relief plausible, so dismissal was proper.

None of Martin's theories has merit. The judgment of dismissal is AFFIRMED.