# United States Court of Appeals for the Fifth Circuit

No. 21-20217

United States Court of Appeals
Fifth Circuit

**FILED**

April 1, 2022

Lyle W. Cayce
Clerk

Cindy Wood Logue,

*Plaintiff—Appellant*,

*versus*

Wells Fargo Bank, N.A.; Specialized Loan Servicing, L.L.C.; Morel Mortgage, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3824

Before Higginson, Willett, and Ho, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:*

When Cindy Logue fell behind on her mortgage, the lender started to foreclose, only to pause in "appreciation" of Logue's husband's military service. A decade later, after Logue and her husband had divorced, the lender's patience finally wore thin. Logue sued to stop the foreclosure, but

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20217

the district court ruled against her, as do we. Because no reasonable jury could conclude that the lender's latest foreclosure suit was untimely, we AFFIRM the district court judgment that the foreclosure can proceed.

I

Cindy Logue bought a house in Houston in 2007. Morel Mortgage, L.L.C.[1] provided the loan and secured it with a deed of trust on the home. By early 2009, Morel had assigned the mortgage to Wells Fargo, and Logue had defaulted. Wells Fargo provided notice, accelerated the loan under the deed of trust, and noticed the Property for foreclosure. The foreclosure has yet to take place, and Logue has yet to cure her default.

So why did one of the nation's largest banks delay foreclosure for more than a decade? Well, in 2010 Mrs. Logue married Mr. Logue. Importantly, Mr. Logue was then serving on active duty in the Army. And Congress has provided certain property protections to our men and women in uniform. Under the Servicemembers Civil Relief Act, a court may stop a lender's efforts to "enforce an obligation" on real property if certain conditions are met.[2] One of those conditions, though, is that the "*servicemember*" has to "own[]" the real property.[3] That may be why when Logue, who has never served on active duty, applied to Wells Fargo for relief under the SCRA, it told her she was "not eligible to receive benefits."

Even so, Wells Fargo extended some mortgage mercy to Logue: "[I]n appreciation of your family's sacrifice in service to our country, Wells Fargo Home Mortgage will grant you full SCRA benefits, for the remainder of your

---

[1] According to Wells Fargo, Morel Mortgage was never served and has not appeared, despite its inclusion in the case caption.

[2] 50 U.S.C. § 3953.

[3] *Id.* § 3953 (a) (emphasis added).

2

spouse's active duty period." That included, said Wells Fargo, benefits like "not be[ing] asked to pay anymore than 6% on [the] loan," and "not be[ing] assessed any late fees."

Wells Fargo never did foreclose. And Mrs. Logue sent periodic updates to Wells Fargo validating that Mr. Logue remained on active duty. But then things changed. The Logues divorced in 2013, though Mr. Logue continued to serve on active duty until 2015. Wells Fargo, for its part, continued to extend Logue "SCRA protection" until 2019. Once Logue's protection expired, Wells Fargo sent her notices of acceleration and sale since she had not cured her default in the intervening decade. Wells Fargo then assigned its interest in the mortgage to Specialized Loan Servicing, L.L.C. Soon after that, and days before the foreclosure sale, Logue sued to stop it in Texas state court.

The Texas trial court granted Logue a temporary injunction to stop the foreclosure. Specialized then removed the case to federal court. Specialized and Wells Fargo then each moved for summary judgment against Logue. The district court, by adopting the magistrate judge's recommendations, granted both motions and entered final judgment in the Defendants' favor. Logue timely appealed.

No. 21-20217

## II

Our standard of review is familiar. "We review summary judgment de novo and apply the same standard as the district court."[4] Summary judgment is proper only if "no genuine dispute of material fact exists" and the moving party is "entitled to judgment as a matter of law."[5] A fact dispute is "genuine" if "a reasonable jury could return a verdict for [Logue] based on the evidence"[6]—and *not* genuine if supported only by "legalistic argumentation."[7]

## III

Logue's central contention—one that underlies all her requested relief—is that Wells Fargo waited too long to foreclose on the Property. That's because, under Texas law, the holder of a deed of trust has four years to initiate a foreclosure after its cause of action accrues.[8] That claim accrues when, in a deed of trust like this one, the holder invokes an acceleration clause because of the default.[9] So, says Logue, because Wells Fargo first accelerated the loan in 2009, well over four years ago, it cannot now foreclose.

That's simple enough. And the Defendants even agree with Logue about what law applies. Yet they urge us to pump the brakes based on an

---

[4] *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 726 (5th Cir. 2021) (citation omitted).

[5] *Id.* (citation omitted).

[6] *Id.* (citation omitted).

[7] *Id.* (citation omitted).

[8] Tex. Civ. Prac. & Rem. Code § 16.035(a); *see also id.* (d) ("On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.").

[9] *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) ("[T]he action accrues . . . when the holder actually exercises its option to accelerate.").

4

important exception. As we have explained before, a holder of a deed of trust can reset the foreclosure clock by voluntarily abandoning the acceleration.[10] Everyone agrees that Wells Fargo never did that expressly. But maybe it didn't have to. Since "traditional principles of waiver" govern abandoning acceleration, Wells Fargo would have been well within its rights to "impliedly" abandon the acceleration.[11] So did it?

We agree with the Defendants that it did. Wells Fargo had to meet three conditions to voluntarily abandon its acceleration. It needed to have: (1) "an existing right, benefit, or advantage"; (2) "actual knowledge of its existence"; and (3) "actual intent to relinquish the right, or intentional conduct inconsistent with the right."[12] The parties do not dispute that Wells Fargo had a right to accelerate the mortgage. Nor do they dispute that Wells Fargo knew about that right. Indeed, Logue concedes that Wells Fargo lawfully did accelerate the Property's mortgage after she defaulted on it in 2009. She disputes only the third element. On that element, though, a reasonable jury could come out only one way based on the summary-judgment evidence: Wells Fargo, at minimum, intended to act inconsistently with its right to continue with the acceleration and foreclosure.

Specifically, Wells Fargo extended Logue "full SCRA benefits." The SCRA generally thwarts ongoing foreclosures.[13] At the same time, though, the parties agree that Wells Fargo didn't have to extend SCRA benefits. And Logue, for her part, neither served nor acquired the Property during her

---

[10] *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105–06 (5th Cir. 2015).

[11] *Id.* (citations omitted).

[12] *Id.* at 105 (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015)).

[13] *See* 50 U.S.C. § 3953.

marriage. In fact, Wells Fargo told Logue that it was extending her "benefits" only in "appreciation" for her husband's service. But it also explained that she was "not eligible" for real benefits under the SCRA and that Wells Fargo was acting "above and beyond" what the law required. Moreover, Wells Fargo's notice to Logue expressly provided that for the "remainder of [her husband's] active duty period" she would not pay more than "6%" interest or any "late fees." Immediately capping interest rates and eliminating late fees is plainly intentional conduct inconsistent with pursuing acceleration and foreclosure.[14] So we must agree with the district court. A reasonable jury could only conclude on these facts that Wells Fargo intended to act inconsistently with its right to accelerate and foreclose on the Property.

We are not persuaded by Logue's legalistic argumentation otherwise. She argues that "it has not been specifically determined by a court that SCRA benefits qualify as abandonment of acceleration." That remains true today since the SCRA never actually protected Logue as to the Property. But it is also of little consequence. Wells Fargo merely needed to show that it was intentionally acting inconsistent with its right to pursue acceleration. It did just that by voluntarily agreeing to extend benefits that would stop a foreclosure if they actually applied.[15]

---

[14] *Cf. Swoboda v. Ocwen Loan Servicing, LLC*, 579 S.W.3d 628, 633–34 (Tex. App. 2019) (holding that a lowering of interest and elimination of late fees was not evidence of intent to abandon a prior acceleration only because it included conditional language requiring a "properly executed" loan-modification agreement and "down payment" *before* it would take effect).

[15] We leave for another day Logue's other counterargument. We have explained before that sending a "request for payment of less than the full obligation—after initially accelerating the entire obligation—[is] an unequivocal expression of the bank's intent to abandon or waive its initial acceleration." *Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016). Specialized argues that capping interest rates and waiving late fees counts as a request for payment of less than the full obligation. Logue disagrees by pointing to a decision from the Texas intermediate courts of appeal tending to support that

No. 21-20217

Based on the summary-judgment evidence, a reasonable jury could only conclude that Wells Fargo intended to act inconsistently with its right to pursue acceleration and foreclosure, thus voluntarily abandoning it. Therefore, we need not reach the parties' remaining arguments.[16]

IV

Logue also asks us for other relief. She argues that her claim to quiet title on the Property survived summary judgment; that her claim for declaratory judgment survived, too; that she is entitled to a permanent injunction against the Defendants to prevent foreclosure; and that Specialized is not entitled to attorney's fees under the deed of trust. But all of those arguments explicitly rely on her contention that the district court erroneously granted the Defendants' motions for summary judgment. Because it did not, and because Logue offers us no other ground for reversing on any of these issues, these other arguments have no traction.

---

something more explicit, like an express request for payment, is required. *See Swoboda*, 579 S.W.3d at 635–36 (discounting statements that did not "actually request[] a payment from [the debtor]"). But since we have already concluded that no genuine issue of material fact exists over Wells Fargo's intent to act inconsistently with its right to pursue acceleration and foreclosure, we reserve this issue for another day.

[16] Wells Fargo argues, in the alternative, that the SCRA tolled the statute of limitations. Logue disagrees, arguing that "detrimental reliance" ended any such tolling in 2016. The Defendants also urge that "quasi-estoppel" prevents Logue from asserting the statute of limitations as a defense. Again, Logue disagrees. We need not weigh-in on either issue since we have already concluded that Wells Fargo intended to act inconsistently with its right to pursue acceleration and foreclosure.

No. 21-20217

\*     \*     \*

Based on the summary-judgment evidence, a reasonable jury could only conclude that Wells Fargo abandoned its 2009 acceleration, thus making the current foreclosure suit timely. Because no other genuine dispute of material fact exists in the record, and because the Defendants are entitled to judgment as a matter of law, we AFFIRM.