# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2026

Lyle W. Cayce
Clerk

————————

No. 25-20056

————————

U.S. Bank National Association, *As Trustee for* CSMC Mortgage-Backed Trust 2007-3; PHH Mortgage Corporation, *Individually* and as *Successor in Interest to* Ocwen Loan Servicing,

*Plaintiffs—Appellees*,

*versus*

Josef M. Lamell, *also known as* Arpad Lamell, *also known as* J. M. Arpad Lamell,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2402

———————————————————————

Before Southwick, Higginson, and Douglas, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:[*]

　　Pro se Defendant-Appellant Josef Lamell appeals the judgment in favor of Plaintiffs-Appellees ("Appellees") after a two-day bench trial following our decision in *U.S. Bank National Association v. Lamell*, 2022 WL

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

1800860 (5th Cir. June 2, 2022) (*Lamell I*). There, we reversed the district court's summary judgment determination that Lamell was barred by res judicata from asserting his affirmative statute of limitations defense.

After remand and trial, the district court found that Lamell released his limitations defense and Appellees were entitled to foreclose on Lamell's property. It also found that Appellees were entitled to pay taxes on the property and that the $92,582.06 Appellees had paid to Harris County for property taxes on Lamell's property was debt secured by the Deed of Trust. The district court also awarded attorneys' fees to Appellees, and it concluded that any claims to proceeds of an insurance settlement were not properly before it. Because we do not find reversible error in the district court's decision, we AFFIRM.

## I.

The history of this loan and foreclosure dispute spans almost two decades and multiple loan servicers.

On September 25, 2006, Josef Lamell (Lamell) signed a promissory Note in the original principal amount of $566,000.00 to pay off four prior secured debts totaling $554,873.25. The Note was payable to the Home123 Corporation. Lamell also executed a Deed of Trust granting Home123 a security interest in his home at 5131 Glenmeadow Drive, in Houston, Texas (the "Property"). On April 11, 2010, Home 123 assigned the Deed of Trust to Appellee United States Bank National Association ("USBNA").

During his testimony at trial, Lamell testified that he had disputed his property tax appraisal and stated he paid only the undisputed portion of his property taxes while the protest was being resolved. The trial exhibits reflect that Lamell filed one prior state lawsuit in 2008, and then another on February 22, 2010, also in state court against certain Harris County entities and officials based on his tax dispute (the "2010 Lawsuit").

No. 25-20056

IndyMac Mortgage Services, a division of OneWest Bank, was the servicer of Lamell's loan at that time, and IndyMac paid the disputed property taxes according to a letter Lamell sent to IndyMac on March 30, 2010. On April 8, 2010, IndyMac sent a default notice to Lamell that outlined his failure to pay $14,532.07 including late fees and informed him of the Note's acceleration if he did not cure the default. Upon receipt of the default notice, Lamell amended the 2010 Lawsuit and added IndyMac as an additional defendant. On April 14, 2010, Lamell sent an additional letter to IndyMac stating that he had settled his 2008 lawsuit and anticipated a reduction in his property taxes.

On November 1, 2013, Ocwen Loan Servicing, LLC ("Ocwen"), assumed IndyMac's obligations to service the loan. CIT Group Inc. acquired One West Bank on August 3, 2015, and operated it as a subsidiary and lender named CIT Bank, N.A. ("CIT"). On April 9, 2019, Lamell supplemented his 2010 Lawsuit ("Third Supplement") and raised his statute of limitations affirmative defense as a complaint against any possible future foreclosure by CIT, or its successors or assigns. Lamell also requested declaratory relief against CIT on the same limitations basis.

On May 16, 2019, CIT and Lamell executed a *Settlement Agreement and Mutual Release of All Claims* (the "Settlement Agreement"), resolving the 2010 Lawsuit. As consideration for the $40,000 settlement payment to him by CIT, Lamell agreed to an expansive release and forever discharge of,

> any and all past, present, or future claims, demands, obligations, actions, causes of action, rights . . . of any nature whatsoever, whether based in statute, in tort, on a contract, a statutory or non-statutory lien, or on other theory of recovery, related to or arising out of any and all claims which were brought or could have been brought by [Defendant Lamell] in connection with the Dispute of the Lawsuit.

3

No. 25-20056

Meanwhile, on April 11, 2019, a notice went out to Lamell informing him that Appellee PHH Mortgage Corporation ("PHH") would assume service of his loan starting May 1, 2019. On July 2, 2019, PHH sent Lamell a foreclosure notice, alerting him that he was in default for failing to make mortgage payments since February 1, 2010; he had to pay $644, 361.99 to cure the default; and that "failure to cure the default by 08/06/2019 will result in acceleration of the sums secured by the Security Instrument and sale of the property." Appellees sent Lamell an acceleration notice on August 20, 2019, which stated, "the maturity date of the Note was accelerated effective 8/20/2019," that "all unpaid principal and accrued interest of the Note are due and payable at this time," and that his "total balance due as of August 16, 2019, is $1,289, 102.72."

USBNA and PHH filed the instant lawsuit against Lamell in the district court on July 3, 2019, seeking declaratory relief that: (1) the statute of limitations does not bar their right to foreclose on the Property or collect on the Note; (2) the waivers and releases contained in the Settlement Agreement prevent Lamell from asserting any affirmative defense to foreclosure or collection on the Note; (3) res judicata barred Lamell from raising the statute limitations defense against enforcing the Loan Agreement; or (4) in the alternative, Appellees are entitled to contractual and/or equitable subrogation and permitted to foreclose on the property.

On August 21, 2019, Appellees filed a motion for summary judgment. The district court granted the summary judgment motion based solely on the ground that res judicata barred Lamell's limitations argument and entered final judgment in the case.

Lamell appealed the judgment, and our court reversed the district court's determination that Lamell was "barred by res judicata from asserting his statute of limitations affirmative defense," and the district court's

4

No. 25-20056

"determination that the Appellees are entitled to foreclosure under the theories of contractual and equitable subrogation." *Lamell I,* 2022 WL 1800860 at *7. We remanded the case for the district court to determine "the abandonment, foreclosure, and subrogation issues." *Id.*

On remand, the district court conducted a two-day bench trial. In a detailed forty-page opinion, the district court held that: (1) Lamell released his limitations defense in the  Settlement Agreement with CIT,[1] entitling Appellees to enforce the release, and therefore, Appellees were entitled to foreclose on the Property; (2) Lamell failed to timely pay property taxes and this coupled with his escrow waiver, authorized Appellees to pay the property taxes; (3) Lamell failed to make payments required under the Note, which as an event of default, entitled Appellees to foreclose under the terms of the Note and Deed of Trust; (4) the Deed has a contractual subrogation clause that treats unpaid advanced property taxes by the Appellees as debt of Lamell; and Appellees had proved a valid claim for contractual subrogation totaling $92, 582.06.

Lamell appeals that judgment, raising four principal arguments. First, he argues that the expired statute of limitations rendered Appellees' property lien void. Second, he argues that Appellees' foreclosure and collection claims predate the CIT Settlement Agreement and were released by it. Third, and relatedly, he argues that Appellees are not authorized to enforce the Settlement Agreement. Fourth, he argues that the insurance settlement fund belongs to Lamell because Appellees' powers of sale under the Deed are

---

[1] As part of this determination, the district court held that the applicable statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.035 was tolled for 755 days, that Appellees and their predecessors did not foreclose or abandon acceleration within four years plus tolling, and thus the foreclosure statute of limitations expired before the CIT Settlement Agreement.

"forever void, barred, and unenforceable" and hence no foreclosure can occur. In his reply, Lamell refines his fourth argument, stating that the tax subrogation claim is "illegitimate" and "barred by the law of the case doctrine and by the mandate rule." Given the interrelatedness of the first three issues, we bifurcate our review between the Settlement Agreement, limitations and foreclosure issues on the one hand, and Lamell's objection to Appellees' amended complaint that includes the contractual and equitable subrogation claims, on the other.

## II.

Because the district court conducted a bench trial, we review its findings of fact for clear error and conclusions of law *de novo. Matter of Ritz,* 832 F.3d 560, 565 (5th Cir. 2016).

"After a bench trial, findings of fact are reviewed for clear error while conclusions of law and mixed questions of law and fact are reviewed de novo." *Eni US Operating Co. v. Transocean Offshore Deepwater Drilling, Inc.*, 919 F.3d 931, 934 (5th Cir. 2019) (citation omitted). "We will disturb a factual finding 'only if we are left with the definite and firm conviction that a mistake has been committed.'" *SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 459 (5th Cir. 2022) (quoting *Deloach Marine Servs., L.L.C. v. Marquette Transp. Co.*, 974 F.3d 601, 606-07 (5th Cir. 2020)). However, "[w]e cannot reverse a district court's factual finding after a bench trial 'simply because we are convinced that we would or could decide the case differently.'" *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 374 (5th Cir. 2024) (quoting *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)). "The clear-error standard following a bench trial requires even greater deference to the trial court's findings when they are based on determinations of credibility." *World Tree Fin.*, 43 F.4th at 459 (citation omitted).

### III.

The first issue before us is whether the district court erred when it found that Lamell released his statute of limitations defense to foreclosure in the Settlement Agreement. Because the underlying dispute deals with interpreting the parties' contractual obligations, we look to state law. *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 770 (5th Cir. 2016). Texas law instructs that a secured lender must sue for the recovery or the foreclosure of a real property lien "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(a). Upon expiration of the four-year limitations period, both the real property lien and power of sale to enforce it become void. *Id.* at § 16.035(d). Notwithstanding this statutory language, both state and federal courts in Texas have concluded that statute of limitations "may be waived by agreement either before or after expiration of the prescribed time limit" so long as "any agreement made before the statutory bar expires [is] specific and for a reasonable time." *American Alloy Steel, Inc. v. Armco, Inc.,* 777 S.W.2d 173, 177 (Tex. App.—Houston [14th Dist.] 1989); *Griffin v. BAC Home Loans Servicing, LP,* 2011 WL 675285, at *2 (S.D. Tex. Feb. 16, 2011).

During the bench trial, Lamell sought declarations that limitations had expired, that Appellees had no authority to foreclose or enforce any claim on the Note, and that the deed was void. The district court extensively analyzed the limitations issue. Relevant here, the district court found that USBNA was entitled to enforce the Settlement Agreement because it expressly released "any predecessors in interest." This finding was buttressed by the fact that the servicing rights on the mortgage originated from USBNA and its predecessor, Home123, supporting its contractual rights and obligations within the Settlement Agreement. Next, referencing the broad language in

the CIT Settlement Agreement that released all of Lamell's "claims" and "rights" "of any nature whatsoever"—the district court also found that Lamell's limitations defense counted as "a right related to a claim that he brought—[i.e.] his [state court] declaratory judgment claim."

We find no error in the district court's findings of fact on the limitations issue given the expansive language in the Settlement Agreement and the legal relationship between the predecessors and successors contemplated in the Settlement Agreement. Lamell contends that our court's prior decision held that his 2010 Lawsuit was "not really a claim at all," because "his request was not accompanied by a related claim of 'coercive' effect, [and] it did not represent the 'end of the road' for Plaintiffs' claims."' Lamell argues that the district court "effectively overruled" our prior decision on the declaratory relief issue "by treating [his] declaratory request as something it was not: a real and fully dispositive claim with coercive end-of-the-road force."

Lamell takes this portion of our prior opinion out of context. That portion of the opinion focused on whether res judicata applied to declaratory judgment dismissals. *Lamell I*, 2022 WL 1800860 at *6. For context, Appellees had originally asserted multiple grounds for declaratory relief in their summary judgment motion before the district court, including abandonment of acceleration, release via the Settlement Agreement, and res judicata. After holding that res judicata barred Lamell from enforcing his limitations defense, the district court did not address the remaining grounds for relief in its prior decision.

Finding that neither the Supreme Court of Texas nor any other Texas intermediary appellate courts had addressed the exact res judicata question at issue, *Lamell I* turned to a closely related question that had state precedents, namely: "whether judgments awarding only declaratory relief

have claim preclusive effect in subsequent suits for coercive relief stemming from the declaratory judgment." *Id.* at *3-5, (citing to *Martin v. Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998); *CBS Outdoor, Inc. v. Potter*, No. 01-11-00650-CV, 2013 WL 269091 at *1 (Tex. App. –Houston [1st Dist.] Jan. 24, 2013, pet. denied) (mem. op.); *Alsheikh v. Arabian Nat'l Shipping Corp.*, No. 01-08-00007-CV, 2009 WL 884795, at *2 (Tex. App.— Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.); *Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 335 (Tex. Civ. App.—Dallas 1973, no writ)). Reasoning that the weight of the case law and gravamen of the Texas Uniform Declaratory Judgments Act cut against finding that Lamell's prior state court declaratory judgment action on the limitations issue had preclusive effect, our court reversed the district court's res judicata basis for granting summary judgment and remanded. *Lamell I*, 2022 WL 1800860, at *7.

It was against this backdrop that the district court, after trial, ruled that Appellees had not waived their Settlement Agreement release argument, they were successors or assigns of CIT entitled to enforcement, and the release covered the limitations defense. We agree.

As to the waiver argument, Lamell avers that the district court conflated his state court request for declaratory relief with his affirmative defense of limitations. Relying on *United States v. Agofsky*, 516 F.3d 280, 283 (5th Cir. 2008) and *Harte v. Bd. of Commissioners of Cnty. of Johnson, Kansas*, 940 F.3d 498, 510 (10th Cir. 2019), he maintains that this alleged conflation violated the law of the case doctrine and the mandate rule. Neither doctrine is implicated here. Our court reversed the district court's specific determination that res judicata barred Lamell from asserting his limitations defense and remanded the case "for determination of the abandonment, foreclosure, and subrogation issues and for further proceedings not inconsistent with this opinion." *Lamell I*, 2022 WL 1800860, at *7.

Appellees had advanced three bases for declaratory relief originally in their summary judgment motion. Recall however, that the district court ruled only on res judicata grounds. Our court reversed that determination, whereafter the district court made determinations on the remaining issues "not inconsistent" with our decision. The district court avoided inconsistency by granting relief based on the Settlement Agreement's limitations release and not res judicata.

The district court ruled that the Settlement Agreement's release covered Lamell's limitations defense because the parties expressly bargained to "resolve all claims for declarations and for damages . . ." On the dispositive question of whether the release in the Settlement Agreement covered limitations, the district court relied on the broad release language, coupled with the arguments Lamell advanced in his state court action. In his third supplement in state court against CIT, Lamell had specifically pled that the limitations period for "all of CIT's available enforcement remedies began running as of the date of acceleration on June 4, 2010,"—and thus had expired. As previously noted, Lamell is correct that our court's prior decision held that "declaratory relief does not necessarily constitute the 'full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Lamell I*, 2022 WL 1800860, at *4. Our decision, however, was focused on the issue of res judicata. Lamell filed his amended supplement five weeks before entering the Settlement Agreement. Indeed, the Settlement Agreement contained language stating that Lamell agrees to release, "any and all claims which were brought or could have been brought by Plaintiff in connection with the Dispute or the Lawsuit." As the district court explained, Lamell's limitations defense counted as a "right related to a claim that he brought"—namely his state court declaratory judgment claim and prayers for relief—and that the Settlement Agreement represented a

"complete and unconditional settlement, release, and compromise . . . regarding all of [Lamell's] claims arising out of . . . the Lawsuit."

Lamell cites *Godoy v. Wells Fargo Bank,* 575 S.W.3d 531, 537 (Tex. 2019), for the proposition that "an agreement in advance not to plead the defense of limitations is void as against public policy" unless "specific and for a limited period of time." He argues that the Settlement Agreement lacks effect because it did not satisfy the required conditions of specificity and limited duration. The district court addressed Lamell's specificity and duration arguments under *Godoy* but distinguished it as inapposite as applied to waiver of an "already-expired statute of limitations." *Id.* at 533, 534 (Tex. 2019).[2] We agree.

As to the successors and assigns issue, the district court found that Appellees maintained a corporate relationship with CIT after analyzing the specific language of the Settlement Agreement and its express inurement to CIT's successors and assigns. The court found, there was an ordinary succession of corporate entities whereby One West Bank merged with CIT

_____

[2] While the district court considered the import of *Godoy*, it nonetheless found the question of whether the Settlement Agreement released post-settlement running of limitations immaterial because "less than four years passed between the settlement" and Appellees' filing of their foreclosure action. It also found that the limitations period reset by operation of law when Appellees sent a new notice of default in 2019. *See Boren v. U.S. National Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015) (explaining that a new default notice indicating intent to abandon prior acceleration reset the four-year statutory clock under §16.035(a)). Under Texas law however, a new notice of default, standing alone, does not reset limitations. Instead, § 16.038 requires lenders to rescind their prior acceleration in writing, via certified mail before the limitations period expires. Tex. Civ. Prac. & Rem. Code § 16.038(a), (b). While this statutory method is not the exclusive method for waiver or recission of the acceleration, it has been interpreted as best practice. *Id.* § 16.038(e). *See also Boren*, 807 F.3d 99, 106 (5th Cir. 2015). The district court also determined that PHH, as mortgagee, had standing to bring non-judicial foreclosure pursuant to Texas Property Code § 51.0025 after they sent Lamell a default notice with intent to accelerate plus a notice of acceleration.

Bank, N.A., and the rights and obligations passed on to CIT. Finally, the district court examined the terms "successor" and "assign." *Black's Law Dictionary* (12th ed. 2024). In applying the dictionary definition of the two terms, the district court determined that Ocwen (and its "successor-by-merger PHH") could enforce the Settlement Agreement. The district court also found that USBNA is a predecessor in interest entitled to enforce the Settlement Agreement. We find no error.

## IV.

The district court also found that Appellees advanced $92,582.06 of Lamell's property taxes and that this sum was secured by the Deed of Trust under Appellees' contractual subordination claim. The Deed of Trust states in relevant part that:

> If . . . (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security instrument . . . Lenders actions can include, but are not limited to (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security instrument, including its secured position in a bankruptcy proceeding . . . *Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security instrument.* (emphasis added).

No. 25-20056

Lamell argues that Appellees' subrogation claims[3] are illegitimate and invokes again the mandate rule[4] and law of the case doctrine,[5] asserting that Appellees waived claims by not raising them in connection with his prior appeal. As Appellees highlight however, Lamell does not challenge the validity of the district court's finding that Appellees advanced over ninety thousand dollars in unpaid taxes, and we find no clear error as to that fact determination by the district court. We agree with the district court's conclusion that the Deed of Trust has an enforceable contractual subrogation clause, applicable here.

—————————————————

[3] The district court treated separately Appellees' equitable subrogation claim they pled in the alternative to their contractual subrogation claim. We do not reach the equitable subrogation claim because we agree with the district court's contractual subrogation determination.

[4] Lamell cites *Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 39 F.4th 202, 210 (4th Cir. 2022) for the proposition that the mandate rule commands any issue which "could have been but was not raised on appeal is waived and thus not remanded." However, he fails to grapple with the fact that Appellees had no obligation to raise the subrogation arguments in the first instance. It was Lamell who appealed the final judgment that ruled solely on res judicata grounds. Moreover, as Appellees highlight in their brief, when the district court ordered Lamell to respond to their motion for leave to file a second amended complaint, he stated that he is "not opposed to the granting of leave for [Appellees] to file their proposed amended complaint."

[5] Lamell quotes language from *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, that reads, "once a court decides an issue, the same issue may not be re-litigated in subsequent proceedings in the same case." 114 F.3d 1513, 1520 (10th Cir. 1997). The difficulty, however, is that Appellees' subrogation claims were not litigated on the merits in the first order he appealed. Given the prior panel's broad remand to the district court, Appellees acted within their right to amend their complaint as permitted under Fed. R. Civ. P. 15(a).

No. 25-20056

## V.

Because we find no clear error in the district court's findings of fact and assess its conclusions of law as correct, we AFFIRM the district court's judgment.